UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMIKA D. SHAW,

        Plaintiff,                Case No. 1:10-cv-1103

v.                                          Honorable Robert Holmes Bell

CINDI CURTIN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff Tomika D. Shaw presently is incarcerated at the Oaks Correctional Facility (ECF). He sues the following ECF employees: Warden Cindi Curtin, Deputy Warden T. Ball, and Assistant Deputy Wardens Robert Sanders and Rick Sharp.

Plaintiff alleges that, on January 28, 2010, he was placed in segregation at ECF. He was housed in Unit 1, a protective custody housing unit. Prior to this time, Plaintiff had been having problems with his cell assignment, and he was unable to obtain full resolution from his case manager. On January 28, 2010, Plaintiff requested help from corrections officer Schreiber. Plaintiff told Schreiber that some of his property was missing and he refused to return to his cell because he feared for his physical safety. Schreiber ordered Plaintiff to go back to his cell, saying that he saw no physical danger. Despite the direct order, Plaintiff refused to return to his cell. As a result, Plaintiff was placed in segregation and issued a misconduct ticket for disobeying a direct order. He has remained in segregation for the last eight months.

Plaintiff alleges that, during his period of segregation, he repeatedly has informed Defendants that violence and rules violations are particularly common in Unit 1. He alleges that they have failed to take action to prevent such violence. In February 2010, he was asked to return to Unit 1, but he refused, so he was placed in administrative segregation. According to the complaint, Plaintiff has appeared once each month before the board for review of his segregation. He continues to express his belief that Unit 1 has a hostile environment, and he regularly refuses to return to the unit. Plaintiff wrote Defendant Curtin on April 22, 2010, complaining about the uncontrolled violence in Unit 1. He filed other kites on June 21, 2010, June 30, 2010, and July 5, 2010,

complaining that Unit 1 was unsafe. On July 8, 2010, he had an interview with Defendants Curtin and Sharp. He alleges that Defendants were derogatory and demeaning and made it seem like Plaintiff was the problem. They refused to do anything and threatened to keep Plaintiff in segregation for years, if necessary. Plaintiff sought a transfer to Bellamy Creek Correctional Facility, which Curtin rejected.

On July 13, 2010, Plaintiff allegedly told Defendant Sanders about his concerns for his physical safety. During his July interview about continuing segregation, Plaintiff informed Sanders that the reason he was refusing to return to his unit was because Defendants were releasing prisoners from segregation after they had been found guilty of serious misconducts involving assaults, fighting and sexual misconduct. He alleges that such individuals are returned to the same unit as some of their victims.

Plaintiff states that from October 13, 2009 through January 28, 2010, he resided in Unit 1 protective custody. During that time, he witnessed assaults in the dining hall, yard, dayrooms and other places. He also observed sexual activities in the dayrooms, showers and cells. Plaintiff contends that, because he wears a neckbrace for a neck problem, he is afraid of the violent environment of Unit 1.

For relief, Plaintiff seeks a variety of injunctive relief: (1) the implementation of a new classification system; (2) safety training and additional oversight of staff; (3) the appointment of an independent overseer of such changes; and (4) transfer to another facility that meets his protective custody needs.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Although Plaintiff does not set forth the constitutional bases for his claims, his allegations arguably implicate both the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Specifically, he appears to allege that he has been forced to remain in segregation for ten months, suffering the attendant loss of privileges, because Defendants refuse to address his legitimate concerns for his physical safety, in violation of the Eighth Amendment. He also appears to argue that his continued segregation is without due process because Defendants fail to either address his safety issues or transfer him to another facility with a segregation unit.

### A. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Deliberate indifference has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, a plaintiff must allege that the risk to his health or safety is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in ignoring the risks to his health or safety. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff fails to allege facts supporting either component of an Eighth Amendment claim. He fails to identify with specificity the existence of any risk particular to himself. Instead, he alleges that he has witnessed assaultive or sexual behavior by prisoners in the past and has a non-specific fear that he will become a victim at some point. While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.") (citing *Wilson v. Seiter*, 893 F.3d 861, 865 (6th Cir. 1990), *vacated on other grounds*, 501 U.S. 294 (1991)). Plaintiff has failed to allege facts that could show a sufficiently serious risk that he would be assaulted. He therefore fails to allege an objectively reasonable basis for his fear for his personal safety.

Moreover, Plaintiff fails to allege facts sufficient to support the subjective component of the deliberate indifference standard. While Plaintiff's allegations may demonstrate that Defendants were aware that Plaintiff was afraid for his safety, they fail to support a claim that Defendants were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," much less that they "dr[e]w the inference." *Farmer*, 511 U.S. at 837. He therefore has failed to allege that Defendants were subjectively aware of and ignored the existence of a serious risk to Plaintiff's safety if he were returned to Unit 1.

Finally, to the extent that Plaintiff complains that placement in segregation itself violates the Eighth Amendment, his claim is without merit. The mere fact that plaintiff was placed in detention, with nothing more, is insufficient to state an Eighth Amendment claim. *See Lacey v.*

*Michigan Dep't of Corr.*, No. 95-1097, 1995 WL 564301 (6th Cir. Sept. 21, 1995) (placement in detention did not violate Eighth Amendment); *Eaddy v. Foltz*, No. 85-1419, 1985 WL 14065 (6th Cir. Dec. 18, 1985) (whether an Eighth Amendment claim is stated for placement in segregation depends upon severity or pervasiveness of conditions). Plaintiff has not alleged that his detention was more severe than the typical conditions of segregation. Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

### B. Due Process

Plaintiff implies that he is being kept in segregation without due process of law because Defendants have failed to meet his demands to make Unit 1 safer or to transfer him to Bellamy Creek Correctional Facility. Upon review, the Court finds that Plaintiff's allegations fail to state either a procedural due process or substantive due process claim.

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change

in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to suggest that his segregation at ECF imposes an atypical and significant hardship. Plaintiff's sole complaint is that, while he is housed in segregation, he cannot enjoy such privileges as television, phone calls and participation in programs and cannot purchase items from the commissary. Such concerns are neither atypical nor significant hardships.

Moreover, even if Plaintiff had a protected liberty interest in his placement in segregation, it is clear that Plaintiff has received due process of law. According to the allegations of the complaint, Plaintiff appears monthly before a board that reviews his continued segregation. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9

(1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Plaintiff not only has received repeated reviews of his status, he repeatedly has been offered the opportunity to return to Unit 1. The fact that Plaintiff is not entirely happy with his options does not demonstrate a violation of procedural due process.

In addition, the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey*, 62 F.3d at 791 n.4 (citing *Rochin v. California*, 342 U.S. 165 (1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations fail to meet this formidable standard. He therefore fails to state a claim that his substantive due process rights were violated.

Finally, to the extent that Plaintiff suggests that he was entitled to placement at Bellamy Creek Correctional Facility, his claim also fails. Plaintiff has no constitutional right to any particular placement or security classification. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995). Because Plaintiff has no liberty interest in his placement, Defendants' denials of his requests for transfer fail to implicate due process.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 3, 2010 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE